Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL V

| OFIC. ÉTICA GUBERNAMENTAL DE PUERTO RICO **Recurrida**<br><br>Vs.<br><br>ROSANA RIVERA ORTIZ **Recurrente** | KLRA202300648 | *REVISIÓN ADMINISTRATIVA* procedente de la Oficina de Ética Gubernamental de Puerto Rico<br><br>Querella Núm. 22-17<br><br>SOBRE: Violación al inciso (b) del artículo 4.2 y al inciso (d) del artículo 4.4 de la *Ley Orgánica de la Oficina de Ética Gubernamental de Puerto Rico*, Ley 1-2012, según enmendada. |

Panel integrado por su presidente, el Juez Hernández Sánchez, la Jueza Romero García y la Jueza Martínez Cordero.

## SENTENCIA

En San Juan, Puerto Rico, a 27 de febrero de 2024.

El 15 de diciembre de 2023, la Sra. Rosana Rivera Ortiz (señora Rivera o recurrente) compareció ante nos mediante un *Recurso de Revisión Judicial* y solicitó la revisión de una *Resolución* que se dictó el 8 de noviembre de 2023 y se notificó el 15 de noviembre de 2023 por el director ejecutivo de la Oficina de Ética Gubernamental de Puerto Rico (OEG o recurrida). Mediante el aludido dictamen, la OEG resolvió que la recurrente incurrió en cuatro (4) violaciones al Art. 4.2(b) y en dos (2) violaciones al Art. 4.4(d) de la Ley Núm. 1-2012, según enmendada, mejor conocida como *Ley Orgánica de la Oficina de Ética Gubernamental de Puerto Rico,* 3 LPRA secs. 1857a y 1857c (Ley Núm. 1-2012). En consecuencia, le impuso a la recurrente una multa administrativa de cinco mil ($5,000.00) dólares por las cuatro (4) violaciones al Art. 4.2 (b) y dos mil quinientos ($2,500.00) por las dos (2) violaciones al

Art. 4.4(b) de la Ley Núm. 1-2012, *supra.* Finalmente, desestimó y archivó las imputaciones de violación al Art. 4.2 (s) de la Ley Núm.1-2012, *supra.*

Por los fundamentos que expondremos a continuación, **confirmamos** el dictamen recurrido.

I.

El 10 de septiembre de 2021, la OEG presentó una *Querella* en el caso núm. 22-17 sobre violaciones al Art. 4.2 incisos (b) y (s) y el Art. 4.4 (b) de la Ley Núm. 1-2012*, supra,* en contra de la señora Rivera.[1] En primer lugar, expresó que esta última ocupó un puesto como Oficial de Vistas Administrativas en el Centro de Recaudaciones de Ingresos Municipales (CRIM) desde el 1 de julio de 2008 hasta marzo de 2020. De igual forma, enumeró las facultades delegadas a la señora Rivera como oficial de vistas administrativas. Luego, detalló las cinco (5) imputaciones en contra de la recurrente. Alegó que la primera infracción en violación a la Ley Núm. 1-2012, *supra,* fue una intervención indebida por parte de la recurrente en el caso de un contribuyente conocido como *Palmas Reales Home Owners Association* (Palmas Reales).

Sobre ello, especificó que la señora Rivera intervino indebidamente en la revisión y evaluación del beneficio de exención de dicha entidad sin fines de lucro, que estaba atendiendo la Administradora de la Oficina Regional de Humacao. Adujo que la intervención indebida consistió en orientar a Palmas Reales mediante su correo electrónico oficial y durante sus horas laborales sobre los documentos a presentar, gestiones a realizar y su opinión en cómo se debía llevar a cabo el caso para poder recibir el beneficio de exención contributiva. Sostuvo que ello era un beneficio no

---

[1] Véase, págs. 33-41 del apéndice del recurso.

permitido por ley y, en consecuencia, constituía una violación tanto al Art. 4.2 (b) y al Art. 4.4 (d) de la Ley Núm. 1-2012, *supra.*

En cuanto a la segunda infracción, indicó que la señora Rivera otorgó una escritura pública a favor de la Sra. Lourdes Burgos Figueroa (señora Burgos) como parte de un asunto que esta última tenía ante el CRIM relacionado a una solicitud de exoneración contributiva. Además, planteó que durante sus horas laborales la recurrente utilizó propiedad del CRIM para digitalizar una hoja de servicios para la señora Burgos y le envió dicho documento a la Supervisora de Servicios de San Juan/Guaynabo del CRIM y le solicitó que actuara sobre este documento. Puntualizó que la recurrente utilizó la propiedad pública para realizar gestiones ajenas a sus funciones por lo que violó el Art. 4.2(b) y el Art. 4.4 (d) de la Ley Núm. 1-2012, *supra.*

Por otro lado, expresó que la tercera violación a los Artículos antes expuestos fue una asesoría que le dio la recurrente a la Sra. Idys Meléndez Meléndez (señora Meléndez), Oficial Examinadora del CRIM, que llevó el caso núm. 2016-02-0760 en contra del CRIM. Alegó que esta supuesta intervención consistió en el recibo y envío de tres (3) comunicaciones a través de su correo electrónico oficial relacionadas a documentos del caso legal de la señora Melendez. Finalmente, esbozó que la cuarta violación que se le imputó a la recurrente por violación al Art. 4.2 (b) y 4.4 (d) de la Ley Núm. 1-2012, *supra,* fue por utilizar equipos y red del CRIM para trabajos privados y asuntos personales de otros empleados del CRIM. En virtud de lo antes mencionado, le solicitó a la OEG la imposición de una multa de hasta veinte mil ($20,000.00) dólares por cada infracción.

En respuesta, el 29 de octubre de 2021, la recurrente presentó una *Contestación a la Querella*.[2] En esta, negó la mayoría de las alegaciones en su contra y presentó sus defensas afirmativas. Luego de varios trámites procesales que no son pertinentes discutir, el 22 de julio de 2022, la señora Rivera presentó una *Moción para que se Nombre un Juez Administrativo* en la cual solicitó que se nombrara un Juez Administrativo con facultad para emitir una decisión en el caso.[3] Además, ese mismo día, presentó una *Moción de Desestimación*.[4] Con relación a la primera imputación en su contra argumentó que, asistió a Palmas Reales en una gestión para obtener un beneficio dispuesto por ley como lo es la exención contributiva para entidades sin fines de lucro por lo que no constituía un "beneficio no permitido por ley". Además, resaltó que el CRIM como quiera no otorgó la exención solicitada. Por otro lado, especificó que el Art. 4.4(d) de la Ley Núm. 1-2012, *supra*, no era aplicable cuando lo que se estaba realizando era un trámite ministerial sobre un beneficio contributivo que brindaba la referida Ley.

Por otra parte, negó que violó las disposiciones de los Arts. 4.2 (b) y el Art. 4.4 (d) en la segunda violación imputada ya que las gestiones notariales que realizó a favor de la señora Burgos no fueron durante las horas laborales, tampoco constituyó una conducta antiética, ni se trataba de un "beneficio no permitido por ley". Nuevamente indicó que únicamente estaba ayudando a gestionar y dándole seguimiento a una solicitud de exoneración. En cuanto a la tercera infracción a los precitados artículos por las comunicaciones que tuvo con la señora Meléndez, sostuvo que estas no se llevaron a cabo durante horas laborales y tampoco la OEG especificó qué tipo de asesoría se le brindó a la señora Meléndez.

---

[2] Íd., págs. 42-45.
[3] Íd., págs. 80-83.
[4] Íd., págs. 84-90.

Planteó que tampoco podía concluirse que había violado el Art. 4.2(b) de la Ley Núm.1-2012, *supra*, en esta situación ya que no quedó claro cuál era el "beneficio no permitido por ley" que le brindó a la señora Meléndez mediante los deberes y facultades de su cargo. De igual forma, puntualizó que la señora Meléndez era una empleada del CRIM y ello automáticamente eliminaba la posibilidad de la aplicación del artículo antes mencionado por no tratarse de un negocio o persona privada. Con relación a la imputación por el Art. 4.4(d) adujo que la alegación en su contra no era suficiente para que se constituyera una violación ética bajo dicho artículo.

Por último, la señora Rivera negó que la cuarta imputación en su contra por utilizar equipos y red del CRIM para presuntamente realizar trabajos privados y asuntos personales de otros empleados del CRIM era una violación a los precitados artículos de la Ley. Por los motivos antes expuestos, solicitó que se desestimara la querella.

El 11 de agosto de 2022, la administradora de sistemas de oficina del área de Oficiales Examinadores y Secretaría emitió y notificó una *Orden* declarando No Ha Lugar la solicitud para que se nombrara un Juez Administrativo y, por ende, ordenó a que la Oficial Examinadora asignada continuara el trámite procesal del caso.[5] El 17 de agosto de 2022, la OEG presentó su respuesta a la solicitud de desestimación de la señora Rivera.[6] En cuanto a la presunta primera y la segunda intervención indebida por parte de la señora Rivera con Palmas Reales y la señora Burgos puntualizó que el asesoramiento interno recibido por un tercero sin que fueran las funciones asignadas a esta última constituía un beneficio que según la Ley Núm. 1-2012, *supra*, es cualquier forma de ventaja. Además, en cuanto al asunto de Palmas Reales añadió que no tenía que otorgarse la exención para que se configurara el beneficio no

---

[5] Íd., pág. 92.
[6] Íd., págs. 93-101.

permitido por ley por lo que se violaron los Art. 4.2 (b) y 4.4 (d) de la Ley Núm. 1-2012, *supra.*

En cuanto a la infracción relacionada al asunto con la señora Meléndez, se reiteró en lo expuesto en la querella y añadió que esta última era una persona natural que no estaba excluida de lo que conlleva ser una "persona privada" aunque fuese empleada del CRIM, por lo que no procedía la desestimación por ese fundamento. De igual forma, insistió en que la señora Rivera violó los Arts. 4.2 (b) y 4.4 (d) de la Ley Núm. 1-2012, *supra,* por utilizar equipos y la red del CRIM para trabajos privados y asuntos personales de otros empleados del CRIM. Por las razones antes mencionadas, concluyó que no procedía la solicitud de desestimación. El 30 de agosto de 2022, la recurrente presentó una *Breve Réplica a Oposición* [...].[7]

Evaluados los planteamientos de ambas partes, el 14 de septiembre de 2022, la Oficial Examinadora asignada al caso emitió una *Orden* que se notificó el 15 de septiembre de 2022 declarando No Ha Lugar la solicitud de desestimación que presentó la recurrente.[8] Posteriormente y luego de que se llevara a cabo el descubrimiento de prueba, los días 5 y 6 de octubre y 30 de noviembre de 2022, se celebró la vista en su fondo en la cual cada parte presentó la prueba oral y documental que entendían necesaria para sostener sus planteamientos.[9] Luego, la Oficial Examinadora que presidió las vistas les concedió a las partes un término para presentar sus argumentaciones finales por escrito. En cumplimiento con ello, ambas partes presentaron sus respectivas argumentaciones finales.[10]

Tomando en consideración la prueba documental y oral que las partes presentaron en la vista en su fondo y los escritos antes

---

[7] Íd., págs. 102-104.
[8] Íd., págs. 105-106.
[9] Íd., págs. 107-112.
[10] Íd., págs. 113-131.

mencionados, el 7 de noviembre de 2023, la Oficial Examinadora emitió un *Informe de la Oficial Examinadora.*[11] En primer lugar, desglosó la prueba documental que se presentó en la vista por ambas partes, que consistía en treinta (30) *Exhibits.* Luego realizó ochenta y nueve (89) determinaciones de hechos.[12] Conforme a las determinaciones de hechos realizadas y el derecho aplicable, la Oficial Examinadora recomendó que la OEG encontrara a la señora Rivera incursa en cuatro (4) violaciones al Art. 4.2 (b) y en dos (2) violaciones al Art. 4.4 (d) de la Ley Núm.1-2012, *supra*, y, en consecuencia, le imputara una multa que considerara adecuada conforme a la discreción que le otorga el Art. 4.7 (c) de la referida Ley. A su vez, recomendó el archivo de las imputaciones de violación al Art. 4.2 (s) de la Ley Núm. 1-2012, *supra.* Así las cosas, el 8 de noviembre de 2023, la OEG emitió una *Resolución* que se notificó el 15 de noviembre de 2023, mediante la cual adoptó la totalidad del informe antes discutido.[13] Por consiguiente, la OEG resolvió que la recurrente incurrió en cuatro (4) violaciones al Art. 4.2(b) y en dos (2) violaciones al Art. 4.4(d) de la Ley Núm. 1-2012, *supra.* Además, le impuso a la recurrente una multa administrativa de cinco mil ($5,000.00) dólares por las cuatro (4) violaciones al Art. 4.2 (b) y dos mil quinientos ($2,500.00) por las dos (2) violaciones al Art. 4.4(b) de la Ley Núm. 1-2012, *supra.* Finalmente, desestimó y archivó las imputaciones de violación al Art. 4.2 (s) de la Ley Núm.1-2012, *supra.*

Inconforme con este dictamen, el 15 de diciembre de 2023, la parte recurrente presentó el recurso de epígrafe y formuló los siguientes señalamientos de error:

> **La OEG procedió de manera arbitraria e irrazonable, al negarse a nombrar un juez administrativo, lo que**

---

[11] Íd., págs. 5-32.
[12] Íd., págs. 8-22.
[13] Íd., págs.3-4.

**tuvo el efecto de privar a la Sra. Rivera de una adjudicación imparcial en el caso.**

**La OEG procedió de manera arbitraria e irrazonable al declarar a la Sra. Rivera incursa en violación al Art. 4.2(b) de la Ley Ética en la situación relacionada a Palmas Reales Homeowners Association.**

**La OEG procedió de manera arbitraria e irrazonable al declarar a la Sra. Rivera incursa en violación al Art. 4.2(b) de la Ley Ética en la situación relacionada a Lourdes Burgos Figueroa.**

**La OEG procedió de manera arbitraria e irrazonable al declarar a la Sra. Rivera incursa en violación al Art. 4.2(b) de la Ley Ética en la situación relacionada a Iris Meléndez, descartando así el precedente del Tribunal de Apelaciones.**

**La OEG procedió de manera arbitraria e irrazonable al declarar a la Sra. Rivera incursa en violación al Art. 4.2(b) de la Ley Ética en la situación del uso del correo electrónico oficial en asuntos relacionados a otros empleados del CRIM, quienes no son personas privadas, descartando así el precedente del Tribunal de Apelaciones.**

**La OEG procedió de manera arbitraria e irrazonable al declarar a la Sra. Rivera incursa en violación al Art. 4.4(d) de la Ley Ética en la situación relacionada a Palmas Reales Homeowners Association.**

**La OEG procedió de manera arbitraria e irrazonable al declarar a la Sra. Rivera incursa en violación al Art. 4.4(d) de la Ley Ética en la situación relacionada a Iris Meléndez, descartando así el precedente del Tribunal de Apelaciones.**

**La OEG procedió de manera arbitraria e irrazonable, al punto de abusar de su discreción, al rebasar el término de 6 meses de la Sec. 3.13(g) de la LPAU, sin que mediaran circunstancias excepcionales.**

Atendido el recurso, el 9 de enero de 2024, emitimos una *Resolución* concediéndole un término a las partes para que presentaran la transcripción de la prueba oral del caso estipulada. Posteriormente, la parte recurrente informó que no iba a someter la trascripción oral del caso. Así pues, el 30 de enero de 2024, emitimos una *Resolución* concediéndole a la parte recurrida hasta el 8 de febrero de 2024 para presentar su alegato en oposición. Oportunamente, la OEG presentó un *Alegato en Oposición* [...] y negó cometer los errores que la parte recurrente le imputó. Con el

beneficio de la comparecencia de ambas partes, procedemos a resolver el asunto ante nos. *Veamos.*

## II.

### -A-

La doctrina de revisión judicial nos encomienda "examinar si las decisiones de las agencias administrativas fueron hechas dentro de los poderes delegados y son compatibles con la política pública que las origina". *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 35 (2018). Al efectuar tal encomienda, debemos "otorgar amplia deferencia a las decisiones de las agencias administrativas". *Graciani Rodríguez v. Garaje Isla Verde,* 202 DPR 117, 126 (2019).

La normativa jurisprudencial ha reiterado que existe en el derecho puertorriqueño una presunción de legalidad y corrección a favor de los procedimientos y decisiones realizadas por las agencias administrativas. *Rolón Martínez v. Supte. Policía*, supra, pág. 35. Lo anterior responde a la experiencia y pericia que se presume tienen dichos organismos para atender y resolver los asuntos que le han sido delegados. Íd.

Así, el estado de derecho vigente nos impone otorgarle deferencia a la agencia administrativa, siempre que la parte que la impugne no demuestre evidencia suficiente que rebata la presunción de legalidad y corrección. *Graciani Rodríguez v. Garaje Isla Verde,* supra, pág.128. Por lo tanto, al realizar nuestra función revisora debemos enfocarnos en determinar si la agencia administrativa: (1) erró en aplicar la ley; (2) actuó arbitraria, irrazonable o ilegalmente; y (3) si lesionó derechos constitucionales fundamentales. *Torres Rivera v. Policía de PR*, 196 DPR 606, 627-628 (2016).

De este modo, si al realizar nuestra función revisora no nos encontramos ante alguna de las situaciones previamente mencionadas, tenemos el deber de validar la determinación

realizada por la agencia administrativa. *Íd.* Ello, aun cuando exista más de una interpretación posible en cuanto a los hechos. *Íd.*, pág. 627. Ahora bien, es preciso recordar que las conclusiones de derecho, por el contrario, serán revisables en todos sus aspectos. Sección 4.5 de la Ley Núm. 38-2017, según enmendada, mejor conocida como *Ley de Procedimiento Administrativa Uniforme del Gobierno de Puerto Rico* (LPAUG), 3 LPRA sec. 9675.

### -B-

La Ley Núm. 1-2012, *supra,* fue creada con el propósito de preceptuar la conducta e integridad de los servidores y exservidores públicos de la Rama Ejecutiva. Exposición de Motivos de la Ley Núm. 1-2012, pág. 2. Particularmente, esta legislación establece que mediante su función preventiva y fiscalizadora y los recursos que la ley le provee, la OEG regula "la conducta de los servidores públicos y penaliza a todos aquellos que transgreden la normativa ética que integra los valores del servicio público". *Íd.* Lo anterior, con el fin de prevenir y atacar la corrupción del Gobierno, la conducta ilegal de los empleados públicos, los conflictos de intereses, el abuso de poder y el ejercicio de influencias indebidas. *OEG v. Rodríguez*, 159 DPR 98, 122-123 (2003). De igual forma, esta legislación va dirija a establecer un servicio público íntegro, con valores, que mantenga la confianza en sus instituciones y asegure la transparencia en las funciones oficiales. *OEG v. Martínez Giraud*, 210 DPR 79, 91 (2022).

En lo pertinente al caso ante nos, el Art. 4.2 de la Ley Núm.1-2012, 3 LPRA sec. 1857a, discute las prohibiciones éticas de carácter general que rigen la conducta de servidores públicos. Específicamente, el inciso (b) de este artículo les prohíbe a los servidores públicos a "utilizar los deberes y las facultades de su cargo ni la propiedad o los fondos públicos para obtener, directa o indirectamente, para él o para una persona privada o negocio, cualquier beneficio que no esté permitido por ley".

Por su parte, el Art. 4.4 del referido estatuto, 3 LPRA sec. 1857c, establece las prohibiciones relacionadas con la representación de intereses privados conflictivo con las funciones oficiales. En lo pertinente, su inciso (d) dispone que "un servidor público, a jornada completa, no puede, durante sus horas laborables, representar, asesorar o servir como perito a una persona privada o negocio en litigios, audiencias públicas o en cualquier caso o asunto ante un tribunal de justicia, ante un organismo cuasi judicial o ante una agencia".

**-C-**

El Art. 3.13(g) de la LPAUG, 3 LPRA sec. 9653, dispone que "[t]odo caso sometido a un procedimiento adjudicativo ante una agencia deberá ser resuelto dentro de un término de seis (6) meses, desde su radicación, salvo en circunstancias excepcionales." A estos efectos, en numerosas ocasiones, nuestro más alto foro ha puntualizado que el aludido término es uno directivo de cumplimiento estricto, mas no así uno jurisdiccional. *UPR Aguadilla v. Lorenzo Hernández*, 184 DPR 1001, 1009 (2012).

Cabe precisar que, nuestro más alto foro en el caso de *Benítez Nieves v. ELA et al.*, 202 DPR 818 (2019), reafirmó su doctrina sobre los términos jurisdiccionales en los procedimientos administrativos. En particular, señaló que "cuando el legislador ha querido que un término para resolver un asunto sea fatal, lo establece expresamente en la ley". Íd., pág. 828. De este modo, "cuando la ley no contiene una expresión a tales efectos, el término deberá entenderse como directivo". Íd. Como es sabido, los términos directivos son prorrogables. *J. Exam Tec. Med. V. Elías et al.*, 144 DPR 483, 494-495 (1997). Sin embargo, la ampliación de este ocurre sólo en circunstancias excepcionales o por renuncia de las partes. Íd.

III.

En su primer señalamiento de error, la señora Rivera argumentó que, la OEG había procedido de manera arbitraria e irrazonable al negarse a nombrar un juez administrativo, lo que tuvo el efecto de privarle de una adjudicación imparcial en el caso. De entrada, resolvemos que este error no se puede atender en sus méritos. Ello, debido a que dicha determinación no se incluyó como parte de las determinaciones que realizó la OEG en la *Resolución* recurrida. Por lo tanto, no tenemos jurisdicción para atender este asunto.

Ahora bien, antes de discutir los otros señalamientos de error, debemos recordar que las determinaciones de hechos basadas en la apreciación de la prueba oral y la credibilidad de los testigos que realicen los organismos administrativos merecen la mayor deferencia judicial, pues son estos los que tuvieron la oportunidad de evaluar el comportamiento de los testigos y sus reacciones durante la vista administrativa. Particularmente, el Tribunal Supremo ha establecido que este foro intermedio está impedido de intervenir con la apreciación de la prueba oral en ausencia de una transcripción o exposición narrativa de una prueba oral.[14]

Asimismo, cabe mencionar que, la presunción de legalidad y corrección de las decisiones de las agencias administrativas prevalece siempre que la parte que la impugne no demuestre evidencia suficiente que la rebata. En vista de lo anterior, la revisión judicial ha de limitarse a determinar si la agencia actuó de manera arbitraria, ilegal, irrazonable, o fuera del marco de los poderes que se le delegaron. De no existir alguna de las situaciones previamente contempladas, estamos obligados a validar la determinación del foro

---

[14] Véase, *Santiago Ortiz v. Real Legacy Assurance Company, Inc.*, 206 DPR 194, 219 (2021); *Santiago Montañez v. Fresenius Medical*, 195 DPR 476, 490 (2016); *Dávila Nieves v. Meléndez Marín*, 187 DPR 750, 771 (2013).

administrativo aun cuando exista más de una interpretación posible en cuanto a los hechos.

Discutiremos el segundo, tercero, cuarto, quinto, sexto y séptimo señalamiento de error en conjunto por estar íntimamente relacionados entre sí. En el segundo, tercero, cuarto y quinto señalamiento de error, la recurrente sostuvo que la OEG actuó de manera arbitraria e irrazonable al encontrarla incursa en violación al Art. 4.2 (b) de la Ley Núm. 1-2012, *supra*, en las situaciones relacionadas con Palmas Reales, la señora Burgos, la señora Meléndez, y el uso del correo electrónico oficial en asuntos relacionados a otros empleados del CRIM. Además, en su sexto y séptimo señalamiento de error, indicó que la OEG erró en declararla incursa en violación al Art. 4.4 (d) de la Ley Núm. 1-2012, *supra*, en las situaciones relacionadas con Palmas Reales y la señora Meléndez.

Examinado el expediente a la luz del derecho aplicable, nos corresponde otorgarle total deferencia a las determinaciones que realizó el foro administrativo. Ello, toda vez que la señora Rivera no sometió la transcripción de la prueba oral del caso de autos. Dicho esto, en primer lugar, quedó demostrado mediante prueba clara, robusta y convincente que la recurrente utilizó las facultades de su cargo, así como propiedad pública, con el fin de que Palmas Reales obtuviera el beneficio de exención contributiva. En particular, la recurrente utilizó su correo electrónico oficial para asesorar a Palmas Reales y accedió al repositorio del CRIM para obtener documentos que este había sometido y enviárselos a la administradora regional de la agencia. Ello, a pesar de que no tenía ningún asunto oficial asignado con respecto a ese contribuyente.

De igual forma, quedó establecido que la señora Rivera utilizó su correo electrónico oficial para solicitar asistencia y cooperación de otra empleada de la agencia, para que la señora Burgos obtuviera

una exoneración contributiva para su propiedad. Surge del expediente que esta gestión, que tampoco formaba parte de sus funciones oficiales, fue un intento de obtener un beneficio para una tercera persona. De otra parte, en cuanto a la situación relacionada a la señora Meléndez, se probó que la recurrente utilizó su correo electrónico oficial en horas laborables para enviarle información y documentación pertinente a una reclamación laboral que la señora Meléndez, una persona privada, tenía ante la CASP. Entiéndase, asesoró a una persona privada en cuanto a una situación personal durante horas laborables, para el beneficio de esta y utilizando propiedad pública. Por lo tanto, concluimos que la señora Rivera violó el Art. 4.2(b) de la Ley Núm.1-2012, *supra,* en las tres situaciones antes descritas.

Por otro lado, en cuanto al Art. 4.4(d) de la Ley Núm. 1-2012, *supra,* se probó de manera clara, robusta y convincente que la señora Rivera asesoró tanto a Palmas Reales y a la señora Meléndez durante horas laborables en asuntos que tenían ante el CRIM y el CASP, respectivamente. En cuanto a la señora Meléndez, reiteráramos que, aunque esta era empleada del CRIM, la orientación que la recurrente le brindó fue sobre un asunto personal que no guardaba relación con sus funciones oficiales en la agencia. Por lo tanto, se trata de una persona privada cuya condición de empleada al momento de los hechos no provoca que la señora Rivera evada la transgresión de este artículo. Consecuentemente, determinamos que estos errores se cometieron.

Por último, en el octavo señalamiento de error, la señora Rivera afirmó que la OEG abusó de su discreción al sobrepasar el término de seis (6) meses para atender el asunto ante su consideración. Como es sabido, el término de seis (6) meses para que una agencia resuelva un procedimiento adjudicativo ante su consideración es directivo y de cumplimiento estricto. *UPR*

*Aguadilla v. Lorenzo Hernández,* supra, pág. 1009. En este caso, ocurrieron varias incidencias procesales que causaron demoras en el procedimiento ante el foro administrativo, algunas atribuibles a la recurrente. Por lo tanto, la adjudicación del asunto por la OEG se demoró por justa causa y este error tampoco se cometió.

IV.

Por los fundamentos antes expuestos, ***confirmamos*** el dictamen recurrido.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda.  Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones